# UNITED STATES DISTRICT COURT

## WESTERN DISTRICT OF LOUISIANA

### LAKE CHARLES  DIVISION

| | |
|---|---|
| ERIC D. BROWNE | CIVIL ACTION NO. 07-1684 |
| VS. | JUDGE MELANÇON |
| ALBERTO GONZALES ET AL | MAGISTRATE JUDGE METHVIN |

### *REPORT AND RECOMMENDATION*

Before the court is a petition for writ of *habeas corpus* filed by petitioner, Eric Browne, pursuant to 28 U.S.C. § 2241.[1]  The undersigned ordered the respondent to answer the petition, and an evidentiary hearing was held on March 19, 2008.  Based on the evidence adduced at the hearing and the applicable jurisprudence, it is RECOMMENDED that the petition for *habeas corpus* be DENIED.

### *Background*

Petitioner is a native and citizen of Liberia.  He entered the U.S. as a non-immigrant student on August 1, 1981, with authorization to remain temporarily until 1983.  Petitioner remained beyond that period, and has a lengthy criminal record beginning in February, 1983 with charges including issuing worthless checks, shoplifting, breaking and entering, burglary, and receiving stolen property.  After an arrest in 2004, petitioner was placed in immigration custody and has not been released since.  It is undisputed that petitioner was ordered removed as a criminal alien due to his criminal convictions and that a final order was issued April 5, 2007.

After the final order of removal, petitioner was interviewed by the Liberian Consulate three times in order to effectuate his removal: 1) in person in May, 2007; 2) by telephone in

---

[1] Rec. Doc. 1.

2

July, 2007; and 3) by telephone in February, 2008.  The following facts are derived from petitioner's testimony concerning the interviews and subsequent events.

During the meeting on May 17, 2007 in York, Pennsylvania, he told the Liberian Consulate, Christopher Neppy, that he had no family or friends in Liberia, that his father was assassinated there, and that he had not returned to Liberia since he left in 1981.  He told Mr. Neppy that his wife of 24 years and his children and grandchildren are United States citizens living in the United States.  Mr. Neppy told ICE officials that he could not request the travel documents because petitioner's family did not request the issuance of the documents.

On July 18, 2007, petitioner had a meeting at the Oakdale prison with Cheryl Johnson, a deportation officer, who told him that there was a Liberian flight and the only reason the Liberian Consulate refused to issue travel documents was because petitioner said that he had pending cases.  Petitioner told Officer Johnson that he did not have any pending litigation.  In order to clear up the confusion, Officer Johnson visited with petitioner again on July 29, 2007 and attempted to contact Mr. Neppy, but he was unavailable.  Officer Johnson and another deportation officer, Karen Lilly, told him that he needed to write a letter to the Consulate advising that he wanted to be removed to Liberia since he did not have any pending litigation and he wanted to return home.  Petitioner testified that Officer Lilly told him that he would be charged with hampering his removal if he did not write the letter.  On July 19, 2007, petitioner wrote a letter to Mr. Neppy asking to be removed to Liberia on the next available flight.[2]

On July 30, 2007, petitioner had a telephone conference with Mr. Neppy.  Petitioner testified that:

_____

[2] Petitioner Exhibit F.

3

>He said, "Didn't I speak with you at your previous interview and told you that
>there's no travel document going to be issued on your behalf?"  I said, "Yes."  He
>said, "What's this thing about a letter that you're writing saying you want to be
>put on a Liberian flight?"  He said, "Did you do this voluntarily?"  I said, "No...
>ICE called me and told me if I don't write this letter, I will be charged with
>hampering my removal and I had been pending in detention so long.  I ain't trying
>to keep sitting in detention.  So I had to do what they said, you know, requested I
>do."  So he said, "Okay."

On August 1, 2007, petitioner spoke with an ICE officer who told him that Mr. Neppy

refused to issue travel documents because petitioner said he was coerced into writing the July 19,

2007 letter.  On August 6, 2007, deportation officer Sandra Strother served petitioner with a

Notice of Failure to Depart.  On August 10, 2007, he was served with a Notice of Failure to

Comply Pursuant to 8 C.F.R. 241.4(g).[3]

On September 11, 2007, petitioner wrote letters to the Consulates for Britain, Canada,

Australia, and Sweden, stating that his native Liberia had refused to issue travel documents on

his behalf and that:

>My detention has caused great emotional pain on me and my family.  I pray and
>ask that your country would kindly accept me for deportation and/or issue a travel
>document on my behalf to DHS/ICE.  I ask that your embassy expeditiously
>respond to my request.  I am willing to provide whatever documents you may
>need to help me get out of this predicament.[4]

Petitioner's requests were refused.  On October 10, 2007, petitioner filed this petition for

*habeas* relief, challenging his continued detention in post-removal-order detention.

On February 27, 2008, petitioner was interviewed by Liberian Consulate Edwin.

Petitioner advised that he has family in United States and that he has been in the United States

---

[3] Government Exhibit E.

[4] Petitioner Exhibit B.

4

since the 1980s.  Petitioner testified that he felt that the Liberian Consulate was concerned with issuing travel documents to him because his family was in the United States and he did not have any contacts with Liberia.

Petitioner testified that although he does not want to return to Liberia, he would rather be free in Liberia than detained in the United States.

### *Issue*

The issue before the court is whether petitioner's continued detention pending the execution of the April, 2007 order is lawful.  Petitioner challenges his detention, arguing that his removal is not likely to occur in the reasonably foreseeable future.  The Government contends that petitioner has not demonstrated that his removal is not likely to occur in the reasonably foreseeable future, because he has not made a true effort to cooperate with the removal process.

### *Legal Analysis*

Following an order of removal, the Attorney General is given 90 days to effect the removal of the alien. 8 U.S.C. § 1231 (a)(1)(A)(the Immigration and Nationality Act).  Detention beyond the removal period is authorized when "the alien fails or refuses to make timely application in good faith for travel or other documents necessary to the alien's departure or conspires or acts to prevent the alien's removal subject to an order of removal." 8 U.S.C. § 1231(a)(1)(C).[5]

In <u>Zadvydas v. Davis</u>, 121 S.Ct. 2491 (2001), the United States Supreme Court held that in order for post-removal detention under 8 U.S.C. §1231 to be constitutional, it must be limited

---

[5] **(C) Suspension of period**
The removal period shall be extended beyond a period of 90 days and the alien may remain in detention during such extended period if the alien fails or refuses to make timely application in good faith for travel or other documents necessary to the alien's departure or conspires *or acts to prevent the alien's removal subject to an order of removal.* (emphasis added).

5

"to a period reasonably necessary to bring about that alien's removal from the United States."

Zadvydas, 121 S.Ct. at 2498.  The Court went on to recognize six months as a presumptively

reasonable period of detention following a final order of removal:

> After this 6-month period, once the alien provides good reason to believe that
> there is no significant likelihood of removal in the reasonably foreseeable future,
> the Government must respond with evidence sufficient to rebut this showing.
> And for the detention to remain reasonable, as the period of prior post-removal
> confinement grows, what counts as the 'reasonably foreseeable future' conversely
> would have to shrink.  This 6-month presumption, of course, does not mean that
> every alien not removed must be released after six months.  To the contrary, an
> alien may be held in confinement until it has been determined that there is no
> significant likelihood of removal in the reasonably foreseeable future.

Zadvydas, 121 S.Ct. 2505.

Thus, merely meeting the six-month detention period does not require automatic release,

but rather at that point there must be a determination of whether there is a significant likelihood

of petitioner's removal in the reasonably foreseeable future.  Andrade v. Gonzales, 459 F.3d 538,

543 (5th Cir. 2006), citing Zadvydas, 121 S.Ct. at 2505.  Further, "The alien bears the initial

burden of proof in showing that no such likelihood of removal exists."  Id.

In order to show that his removal is not likely to happen in the reasonable foreseeable

future, petitioner must show that he has made a "full and honest effort to secure travel

documents."  Davis v. Gonzalez, 482 F.Supp.2d 796, 802 (W.D.Tex. 2006) citing Lema v. INS,

341 F.3d 853, 857 (9th Cir. 2003).  "[T]he risk of indefinite detention that motivated the Supreme

Court's statutory interpretation in Zadvydas does not exist when an alien is the cause of his own

detention." Pelich v. Immigration and Naturalization Service, 329 F.3d 1057, 1060 (9th Cir. 2003);

See also Ayigba v. Young, 2007 WL 2736678, *5 (W.D.La. 2007); Rosario v. Gonzalez, 2007 WL

1232207, *5 (W.D.La. 2007); Amadi v. Young, 2007 WL 855358, *3 (W.D.La. 2007).  In Pelich

v. INS, supra, the court denied the § 2241 petition, finding that the petitioner was "responsible for his plight" because he refused to complete the appropriate passport application necessary for his removal.  Thus, when an alien is the cause of his own detention, he cannot assert a viable constitutional challenge to his indefinite detention because "the detainee controls the clock." Lema, 341 F.3d at 856 *citing* Pelich.  Under such circumstances, the "detainee cannot convincingly argue that there is no significant likelihood of removal in the reasonably foreseeable future ...." Id.

Here, petitioner has been in post-removal-order detention since April 5, 2007, a period greater than six months.  However, in order for petitioner to secure his release from custody, it must be shown he has been detained beyond a period reasonably necessary to bring about his removal from the United States, and that there is no significant likelihood of removal in the reasonably foreseeable future despite his full cooperation with the Government's attempt to have him remove.

Petitioner's testimony during the evidentiary hearing shows that although petitioner has been cooperative to a point, at each juncture when Liberian officials get to his case, they speak with him and he makes it clear through his demeanor and responses, that he does not want to return to Liberia.  Although perhaps not expressly stated, petitioner makes clear to the Liberian Consulate that he does not want travel documents issued because his family is in the United States and he has no contacts in Liberia.  In addition, he told the Liberian officials that he was forced to write the letter of July 19, 2007 wherein he requested travel documents.  The evidence is clear that petitioner has not provided the Liberian Consulate with an unequivocal request for travel documents.

7

As in <u>Pelich</u>, petitioner is "responsible for his plight."  He has not provided the Liberian Consulate with an honest and unequivocal request for travel documents, such as those made to Australia, Britain, Canada, and Sweden.  Under these circumstances, petitioner "cannot convincingly argue that there is no significant likelihood of removal in the reasonably foreseeable future ...."  <u>Lema</u>; <u>Pelich</u>; <u>Rosario</u> <u>supra</u>.

### *Conclusion*

For the reasons discussed above, the undersigned finds that petitioner has failed to carry his burden demonstrating that there is no likelihood of his removal in the reasonably foreseeable future or that he has been detained beyond what is reasonably necessary to bring about his removal from the United States.   Accordingly,

**IT IS RECOMMENDED** that this petition be **DENIED AND DISMISSED without prejudice**.

Under the provisions of 28 U.S.C. Section 636(b)(1)(C) and Rule 72(b), parties aggrieved by this recommendation have ten (10) business days from receipt of this report and recommendation to file specific, written objections with the Clerk of Court.  A party may respond to another party's objections within ten (10) days after receipt of a copy of any objections or responses to the district judge at the time of filing.

8

Failure to file written objections to the proposed factual findings and/or the proposed legal conclusions reflected in this Report and Recommendation within ten (10) days following the date of receipt, or within the time frame authorized by Fed.R.Civ.P. 6(b), shall bar an aggrieved party from attacking either the factual findings or the legal conclusions accepted by the District Court, except upon grounds of plain error.  See **Douglass v. United Services Automobile Association,** 79 F.3d 1415 (5th Cir.  1996).

Signed at Lafayette, Louisiana, on April 16, 2008.

Mildred E. Methvin
United States Magistrate Judge
800 Lafayette St., Suite 3500
Lafayette, Louisiana 70501
(337) 593-5140 (phone) 593-5155 (fax)